# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                 No.  CV 97-803 JP/RLP

ELEPHANT BUTTE IRRIGATION DISTRICT;
EL PASO COUNTY WATER IMPROVEMENT
DISTRICT NO. 1; HUDSPETH COUNTY
CONSERVATION AND RECLAMATION
DISTRICT NO.1; CITY OF EL PASO;
NEW MEXICO STATE UNIVERSITY;
STAHMANN FARMS, INC; STATE OF
NEW MEXICO *EX REL.* OFFICE OF THE
STATE ENGINEER; CITY OF LAS CRUCES,

       Defendants.

## MEMORANDUM OPINION AND ORDER

    This memorandum opinion disposes of numerous motions to dismiss the complaint.[1]  It

also addresses a motion for more definite statement as to the cross-claim brought by Defendant El

---

[1]  The motions to dismiss the Complaint are the following:
(1) Defendant Elephant Butte Irrigation District's Motion To Abstain/Dismiss, filed Sept. 2, 1997 (Docket No. 32), brief in support filed March 3, 2000 (Doc. No. 216);
(2) Defendant New Mexico State University's Motion To Dismiss, filed Sept. 2, 1997 (Doc. No. 35), and New Mexico State University's Amended Motion To Dismiss on Grounds of Abstention, filed Mar. 8, 2000 (Doc. No. 223), brief in support filed Mar. 8, 2000 (Doc. No. 224);
(3) Defendant New Mexico State University's Motion To Dismiss for Lack of Jurisdiction, filed Mar. 8, 2000 (Doc. 221), brief in support filed Mar. 8, 2000 (Doc. No. 222);
(4) Defendant Stahmann Farms, Inc.'s Motion To Dismiss, filed Sept. 2, 1997 (Doc. No. 30), brief in support filed Aug. 1, 2000 (Doc. No. 243);
(5) Defendant State of New Mexico's Motion To Dismiss for Failure To Join Indispensable Parties, filed Mar. 8, 2000 (Doc. No. 212), brief in support filed Mar. 8, 2000 (Doc. No. 213);
(6) Defendant State of New Mexico's Motion To Dismiss for Lack of Jurisdiction and on Abstention Grounds, filed Mar. 8, 2000 (Doc. No. 214), brief in support filed Mar. 8, 2000 (Doc. No. 215); and
(7) City of Las Cruces' Motion To Dismiss, filed Apr. 24, 2000 (Doc. No. 233), brief in support filed Apr. 24, 2000 (Doc. No. 234).

Paso County Water Improvement District No. 1 against Elephant Butte Irrigation District,[2] and a motion to dismiss the counterclaim brought by Defendant El Paso County Water Improvement District No. 1 against the United States.[3]  Because of a stay pending mediation, many of the motions were filed in 1997 but not briefed until March 2000.  After carefully considering the pleadings, the briefs and exhibits, and the applicable law, I conclude that the motions to dismiss should be GRANTED IN PART and that the Complaint should be DISMISSED.  I also conclude that the motion to dismiss the counterclaim should be DENIED on the grounds stated, but that the counterclaim should be DISMISSED or TRANSFERRED on other grounds.  The remaining motions are deemed to be moot.

## I. INTRODUCTION

The United States filed its Complaint on June 12, 1997 seeking to quiet title in its water rights for the Rio Grande Reclamation Project ("Rio Grande Project").  It claims that its title has been clouded by the adverse claims of the named Defendants.  The Rio Grande Project is the vehicle by which the United States stores and delivers water to irrigation districts in New Mexico and Texas in accordance with the Rio Grande Compact and contracts with two irrigation districts, and to Mexico under an international treaty.  In order to meet these water delivery obligations, the United States asserts the right to divert, store, and deliver waters of the Rio Grande and its tributaries, including return flows, for the entire Rio Grande Project from Elephant Butte

---

[2]  Defendant Elephant Butte Irrigation District's Motion for More Definite Statement as to Cross-Claim of Defendant El Paso County Water Improvement District No. 1, filed September 2, 1997 (Doc. No. 31), brief in support filed March 3, 2000.

[3]  State of New Mexico's Motion To Dismiss Counterclaim and Cross-Claim of El Paso County Water Irrigation District No. 1 on Abstention Grounds and for Lack of Jurisdiction, filed Mar. 8, 2000 (Doc. No. 210), brief in support filed same day.

Reservoir to Fort Quitman in Texas. The Rio Grande Project consists of an extensive network of dams, reservoirs, canals, and other water storage and delivery facilities.

Defendants named in the Complaint are Elephant Butte Irrigation District ("EBID"), El Paso County Water Improvement District No. 1 ("EPCWID"), Hudspeth County Conservation and Reclamation District No. 1 ("Hudspeth"), City of El Paso ("El Paso"), Stahmann Farms, Inc. ("Stahmann"), and State of New Mexico *ex rel.* State Engineer ("State Engineer"). The City of Las Cruces ("Las Cruces") was allowed to intervene as a Defendant without opposition on November 18, 1997.[4]

The "New Mexico Defendants" (EBID, Stahmann, State Engineer, and Las Cruces) have filed answers and/or motions to dismiss; the "Texas Defendants" (EPCWID, Hudspeth, and El Paso) have filed answers. In addition, Defendant EPCWID filed a counterclaim alleging violation of various contractual duties by the United States.

## II. BACKGROUND

*Allegations of the Complaint.* The Complaint alleges that the Rio Grande is an interstate and international stream system, originating in Colorado, flowing through New Mexico, and forming the boundary between Texas and Mexico. The Rio Grande Project was authorized by Congress on February 25, 1905 under the authority of the Reclamation Act of 1902, 43 U.S.C. § 371 *et seq.* The Rio Grande Project runs from the headwaters of Elephant Butte Reservoir in New Mexico to Fort Quitman in Texas, occupying the river bottom land of the Rio Grande Valley

---

[4] The following additional parties have moved to intervene but the motions are contested: (1) State of Texas; (2) Pueblo of Isleta del Sur; (3) Lower Valley Water District; (4) State of Colorado; and (5) James Scott Boyd. These motions are fully briefed, but I deferred ruling on them pending rulings on the motions to dismiss. Because I am dismissing the Complaint, these motions are moot.

in south-central New Mexico and northwest Texas.

The Rio Grande Project facilities now include two dams and reservoirs (Elephant Butte and Caballo), a power generating plant, and six diversion dams on the river in New Mexico and Texas.  The Project's delivery and drainage system consists of approximately 139 miles of canals, 457 miles of laterals, and 465 miles of drains.  The system provides water for irrigation to lands within EBID in New Mexico and within EPCWID in Texas.  The system crosses back and forth between Texas and New Mexico at several locations so that water may be delivered throughout the irrigated lands in the lower Mesilla Valley.  Thus, a portion of Rio Grande Project water that is diverted in New Mexico is delivered to individual farms in Texas, and a portion that is diverted in Texas is delivered to individual farms in New Mexico.

The Complaint further alleges that Congress has authorized the use of water from the Rio Grande Project for irrigation and various other purposes, including power generation, municipal and industrial uses, recreation, and fish and wildlife.  In addition to providing water for irrigated lands in EBID and EPCWID, the Project provides water for other entities in the region, and furnishes electric power for communities and industries in the area.  It also makes water available for recreation for thousands of New Mexico and Texas residents, and for fish and wildlife. Further, return flow from Rio Grande Project lands provides irrigation water to Hudspeth in Texas.

There are two major sources of obligatory water delivery by the United States for which it uses Rio Grande Project water.  One, it is used to fulfill the Unites States' obligations to Mexico stemming from a 1906 treaty between the two countries.  The 1906 treaty obligates the United States, through the International Boundary and Water Commission, to deliver 60,000 acre-feet of

water per year to Mexico.  This is accomplished by diverting river water at the International

Diversion Dam near El Paso, Texas into the Acequia Madre canal system in Mexico.  Two, the

Rio Grande Project implements the Rio Grande Compact, an interstate agreement that equitably

apportions the waters of the Rio Grande above Fort Quitman, Texas among the states of

Colorado, New Mexico and Texas.  The Rio Grande Compact was ratified by the three states and

approved by Congress in 1939.  It requires New Mexico to deliver a certain quantity of water to

Texas at Elephant Butte Reservoir.

The Complaint alleges that in operating the Rio Grande Project for the numerous purposes

authorized by Congress, the United States relies upon the water stored in the reservoirs, upon the

water returned to the stream system in return flows, and upon inflows to the Rio Grande in both

New Mexico and Texas.  All these sources of water intermingle; together they enable the United

States to meet its Rio Grande Project delivery requirements of approximately 931,841 acre-feet

per annum under normal conditions.  All these sources are necessary to meet these requirements.

The Complaint alleges that the United States has complied with all applicable laws in

obtaining the necessary water rights for the Rio Grande Project.  In January 1906, the United

States filed with the New Mexico Territorial Irrigation Engineer notice of its  appropriation of

730,000 acre-feet of water for the Rio Grande Project, and in April 1908 it filed a supplemental

notice of its intent to utilize all the unappropriated water of the Rio Grande.

The Complaint alleges that legal title to and record ownership of Rio Grande Project

water rights remain in the United States, and that the various claims of the Defendants to

ownership of Rio Grande Project water rights cloud the United States' legal title.  It alleges first

that Defendant EBID claims that it owns or holds legal title for the water rights for the Rio

Grande Project because when EBID completed payment of its reimbursable construction debt to the United States, title to the Rio Grande Project water rights transferred from the United States to EBID.  Second, Defendant EPCWID has applied for and been issued a permit for the use of Rio Grande Project water from the Texas Natural Resource Conservation Commission ("TNRCC").  EPCWID thus claims that it is the legal or beneficial owner or owner in trust of substantial Rio Grande Project water rights.  Third, Defendant Hudspeth has applied for and been issued a permit for the use of Rio Grande Project water from the TNRCC.  Fourth, Defendant El Paso uses Rio Grande Project water, and it has applied for and been issued a permit for the use of Rio Grande Project water from the TNRCC.  Finally, Defendants NMSU and Stahmann Farms, Inc. both use Rio Grande Project water and claim ownership of Rio Grande Project water rights.

It is further alleged that Defendant State Engineer has general supervision of waters of the State of New Mexico and of the measurement, appropriation, and distribution thereof, and has such other duties as required to administer the waters of the State of New Mexico.

The Complaint contains five causes of action.  For its first cause of action, the United States alleges that the Defendants' actions have cast a cloud upon the United States' right to divert, impound, and store waters of the Rio Grande and its tributaries in Elephant Butte Reservoir up to and including 2,638,860 acre-feet, and it requests the Court to quiet its title to divert, impound, and store that quantity of river water in Elephant Butte Reservoir, with the right to fill and refill, with a priority date of 1906.  The second cause of action contains the same allegations and request with regard to water stored in Caballo Reservoir, up to and including 345,872 acre-feet.  The third cause of action focuses on the Unites States' right to collect, recapture, divert, and redivert all Rio Grande Project return flows from Elephant Butte Reservoir

6

downstream to Fort Quitman, Texas.  It alleges this right is no greater than 931,841 acre-feet per annum, whether the return flows originate in New Mexico or Texas, and it requests the Court to quiet its title to these return flows.  The fourth cause of action contains the same allegations and prayer with regard to Rio Grande inflows from Elephant Butte Reservoir downstream to Fort Quitman, Texas. The fifth cause of action alleges that Defendants' actions have cast a cloud upon the Unites States' right to all water released from Rio Grande Project storage facilities in New Mexico from Elephant Butte Reservoir to Fort Quitman, Texas, and it prays the Court to quiet its title to all such water.

The relief sought by the United States is for a declaratory judgment quieting its title to the right to waters of the Rio Grande and its tributaries to meet the purposes of the Rio Grande Project.  This includes the United States' alleged right to all the water and uses described in the five causes of action.  The United States also seeks a declaratory judgment requiring the State Engineer to supervise the measurement, appropriation, and distribution of the waters of the State of New Mexico in accordance with relief sought in the Complaint.

*Procedural History.*  In 1986, EBID filed a complaint in the New Mexico State District Court of Doña Ana County against the New Mexico State Engineer, the United States, and the City of El Paso, seeking a comprehensive adjudication of the lower Rio Grande river system.[5] The complaint also sought injunctive relief against El Paso relating to its use of groundwater claimed by EBID, injunctive relief against the State Engineer compelling a hydrographic stream survey, and an injunction against the United States compelling it to set forth any claims that it

---

[5] That case is now styled State of New Mexico ex rel. Office of the State Engineer v. United States, et al., Doña Ana County District Court, Cause No. CV-96-888.

might have to water in the lower Rio Grande.  It also named as defendants all known and unknown claimants to waters of the Rio Grande between Elephant Butte Reservoir and the New Mexico-Texas state line.

The defendants filed several motions to dismiss the state court case on various jurisdictional grounds, which were denied.  The United States included among its grounds for dismissal failure of the complaint to satisfy McCarran Amendment requirements for waiver of federal sovereign immunity because the adjudication covered only the lower Rio Grande, not the entire stream.  Then El Paso removed the case to this federal court (the United States joined in the petition for removal).[6]  In resisting EBID's motion to remand to state court, the United States argued, among other things, that important federal questions supported federal jurisdiction. These federal questions included whether the McCarran Amendment waiver applied, as well as issues involving the Rio Grande Compact and the Treaty with Mexico.  Eventually the case was remanded to state court,[7] where it remains.

In the meantime, numerous other defendants had been named, including Stahmann Farms and NMSU.  After the case was returned to state court, the defendants filed more jurisdictional motions to dismiss, all of which were eventually denied.  The state court's rulings were affirmed on appeal in the New Mexico Court of Appeals, which specifically rejected the United States'

---

[6] The case was styled Elephant Butte Irrigation District, Plaintiff, v. The United States of America, et al., Defendants, U.S. Dist. Ct.., D.N.M. Civ. No. 87-1472 JB.

[7] Elephant Butte Irr. Dist. v. United States, Civ. No. 87-1472 (D.N.M. Mar. 22, 1989 Order of Remand).

McCarran Amendment argument and affirmed jurisdiction in the state district court.[8]  The case

resumed as a general stream adjudication in state court in 1993.  Once again, the United States

filed a motion to dismiss on McCarran Amendment grounds.  By order of March 31, 1997 State

District Judge Valentine denied the motion on its merits and on the ground of law of the case.

The parties were realigned so that the New Mexico State Engineer is the plaintiff and all water

rights claimants are defendants.  EPCWID sought intervenor status but later modified its stance in

favor of participation as *amicus curiae*, which was granted subject to being allowed to intervene

as a party if and when it believes joinder is necessary.

The United States filed this federal case on June 12, 1997.  The proceedings were stayed

on September 8, 1997 to allow mediation, which was pursued for over two years.  The stay was

lifted on November 30, 1999, after which the motions to dismiss were briefed fully.

Texas has a comprehensive water adjudication it began more than three years ago to

decide water rights in the Upper Rio Grande from the New Mexico-Texas state line to Fort

Quitman, Texas.  This is pending before the Texas Natural Resource Conservation Commission

(TNRCC).

### III.  MOTIONS TO DISMISS THE COMPLAINT

The grounds for dismissal argued by the New Mexico Defendants include the following:

deferral to state court proceedings under the <u>Colorado River</u> Doctrine; traditional abstention

principles; declaratory judgment discretion to exercise jurisdiction ("<u>Brillhart</u>" abstention); failure

to state a claim; lack of subject matter jurisdiction over the *res*; failure to join indispensable

---

[8] <u>Elephant Butte Irr. Dist. v. Regents of New Mexico State Univ.</u>, 115 N.M. 229, 236-36, 849 P.2d 372, 378-79 (Ct. App.), *cert. denied,* 115 N.M. 359, 851 P.2d 481 (1993).

parties; *res judicata*; and lack of jurisdiction to amend the Rio Grande Compact.  I have concluded that I must dismiss this case under the Colorado River Doctrine and because this is a declaratory judgment action.  Hence, I will discuss only these issues.

### A. **Colorado River Doctrine**

The New Mexico Defendants advocate abstention under the Colorado River Doctrine. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  In that case the United States brought suit in federal court, naming about 1,000 water users as defendants, to obtain a determination of the federal reserved water rights of the United States and of two Indian tribes in Colorado.  Shortly thereafter, one of the defendants applied to make the United States a party to Colorado state water division proceedings that encompassed the rights involved in the federal case.  The United States was joined under authority derived from the McCarran Amendment of 1952, which waives federal sovereign immunity in water rights suits adjudicating "use of water of a river system . . . ."  43 U.S.C. § 666(a).  Several parties then sought dismissal of the federal lawsuit on the ground that the McCarran Amendment had repealed federal court jurisdiction for water rights cases.  Without reaching that jurisdictional question, the district court dismissed the federal case on traditional abstention grounds.  The Tenth Circuit Court of Appeals reversed, stating that abstention was inappropriate.

The Supreme Court, in turn, reversed the Tenth Circuit and affirmed the district court's dismissal of the lawsuit even though it disagreed with the district court's reliance on traditional abstention doctrines, which are based on constitutional and federal-state relations considerations. The Supreme Court ruled that both federal and state courts had concurrent jurisdiction over the water rights adjudication.  Despite the "virtually unflagging obligation of the federal courts to

exercise the jurisdiction given them," 424 U.S. at 817, the Supreme Court held that the federal

lawsuit should be dismissed in favor of the more comprehensive state court water rights

adjudication.  It found dismissal appropriate out of "considerations of wise judicial administration,

giving regard to conservation of judicial resources and comprehensive disposition of litigation."

Id.  The Supreme Court stated that the most important factor counseling against retention of

concurrent jurisdiction in the federal court was found in the policy of the McCarran Amendment

itself:

> The clear federal policy evinced by that legislation is the avoidance of piecemeal
> adjudication of water rights in a river system. This policy is akin to that underlying
> the rule requiring that jurisdiction be yielded to the court first acquiring control of
> property, for the concern in such instances is with avoiding the generation of
> additional litigation through permitting inconsistent dispositions of property. This
> concern is heightened with respect to water rights, the relationships among which
> are highly interdependent. Indeed, we have recognized that actions seeking the
> allocation of water essentially involve the disposition of property and are best
> conducted in unified proceedings . . .  The consent to jurisdiction given by the
> McCarran Amendment bespeaks a policy that recognizes the availability of
> comprehensive state systems for adjudication of water rights as the means for
> achieving these goals.

Id. at 819 (citation omitted).

The sweep of the Colorado River Doctrine and of the McCarran Amendment were

strengthened in a sequel.  In Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545

(1983), various tribes in Arizona and Montana attempted to distinguish Colorado River and

argued for retaining federal court jurisdiction to adjudicate Indian tribal water rights because the

enabling acts establishing the states of Arizona and Montana, as well as those states' own

constitutions, prohibited them from exercising jurisdiction over Indian lands.  The Supreme Court

ruled that deferral to state water adjudications was required, and in doing so construed the

11

McCarran Amendment as removing whatever limitations on state court jurisdiction over Indian water rights had been imposed by the enabling acts or other federal policy.  Id. at 564.  The Court saw no indication in the McCarran Amendment that Congress intended it to differ in its reach from one state to another.  Id.

Application of the Colorado River Doctrine depends on finding "exceptional circumstances" to justify dismissing a case over which federal jurisdiction exists.  424 U.S. at 813, 818.  Water rights adjudications have been recognized as "virtually unique" cases, and the McCarran Amendment as a "virtually unique federal statute."  San Carlos Apache Tribe, 463 U.S. at 571; United States v. Bluewater-Toltec Irr. Dist., 580 F. Supp. 1434, 1443 (D.N.M. 1984), aff'd 806 F.2d 986 (10th Cir. 1986).  Thus, where a "parallel" state court water rights adjudication is pending, even when traditional abstention principles do not apply, a federal court must consider dismissal under the principles announced in Colorado River.  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 13 (1983) (federal court may decline jurisdiction because of parallel state litigation only in exceptional circumstances).  The McCarran Amendment "represents Congress's judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts."  Id., 460 U.S. at 16.  Avoidance of piecemeal litigation is premised on the assumption that the state adjudications are "adequate" to resolve the issues between the parties.  San Carlos Apache, 463 U.S. at 570; Moses H. Cone, 460 U.S. at 28.  In other words, the state and federal cases must be parallel, and the state case to which a federal court would defer must be capable of providing complete relief.

What constitutes "parallel" state proceedings has been examined in later cases.  The Tenth

Circuit has stated that suits are parallel "if substantially the same parties litigate substantially the same issues in different forums." <u>Fox v. Maulding</u>, 16 F.3d 1079, 1081 (10th Cir. 1994). The court should "examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." <u>Id.</u> One factor is whether it is "likely that judgment in one suit will have a *res judicata* effect in the other suit." <u>Calvert Fire Ins. Co. v American Mut. Reinsurance Co.</u>, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979). One court cautioned that a particularly relevant factor in finding suits parallel is that "the federal action is but a 'spin-off' of more comprehensive state litigation." <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1417 (9th Cir. 1989).

The New Mexico Defendants contend that this suit is parallel to the more comprehensive general adjudications pending in state court in New Mexico, and in the TNRCC in Texas. The Complaint in this case requests that the Court determine the ownership of the United States' claims to Rio Grande Project waters. The United States' interest in Rio Grande Project water is also at issue in the state case. The water rights claims of the United States are brought into issue in the state case, in which the United States claims rights by means of its filing of appropriation notices with the New Mexico Territorial Irrigation Engineer in 1906 and 1908. The state case already provides a forum for adjudicating all the thousands of interrelated water rights in the lower Rio Grande basin, including those of the United States, and thus for providing a comprehensive final decree. Further, the proceeding in federal court could create a bifurcated post-decree judicial administration of water rights, resulting in the type of piecemeal adjudication and conflict which the McCarran Amendment was enacted to prevent. Even though the state court has already indicated it will rule on the federal claims as part and parcel of the thousands of other claims before it, the United States now asks this federal court to "spin off" and hear only its

claims to lower Rio Grande basin water.

The United States contends that the state court action is not parallel because it is not adjudicating the same subject matter.  It reasons that this federal case is both more comprehensive and narrower than the state case.  It argues that the federal quiet title claim is broader in scope for two reasons.  First, it includes the Rio Grande Project rights from Elephant Butte Reservoir to Fort Quitman, Texas, whereas the state adjudication extends only from the Elephant Butte dam to the New Mexico-Texas state line, omitting the water in the reservoir, and omitting the water in the river south of the state line.  Second, it includes two additional parties which are crucial to the case, i.e., the Texas water districts EPCWID and Hudspeth.  Thus, the United States asserts that it cannot obtain complete relief of its claims in the state court adjudication, and that only this federal case can prevent fragmenting of its Rio Grande Project rights.

Although some evidence suggests the water stored in Elephant Butte Reservoir is excluded from the state proceedings, there are strong indications that it is or certainly could be included in the hydrosurvey and in the adjudication.  For example, the New Mexico Defendants make the point that even though for practical reasons the delivery point for Rio Grande Compact water was moved from north of the reservoir to the dam, this does not mean that the water in the reservoir is not part of the lower Rio Grande basin.  The reservoir water is exclusively committed to use in the lower basin, and it makes sense that the rights to this stored water can and should be decided in the state court adjudication.  Also, the State of New Mexico recently filed a Notice of Intent in the state adjudication indicating it intends to make an offer of judgment to the United States for its asserted rights to store and divert water for the Rio Grande Project.  This offer will

14

be made "upon conclusion of the hydrographic survey."  Notice, Ex. B to NM Reply.[9]

The United States also attempts to circumvent <u>Colorado River</u> dismissal by arguing that the state court has recognized that it does not have jurisdiction over all the issues presented in this case.  The fourth amended complaint in the state case alleges that the adjudication begins at the "outlet structure" of the Elephant Butte dam.  U.S. Ex. C, ¶ 5.  It cites remarks by Judge Valentine at hearings in the state case, including:

> Frankly, I don't have any jurisdiction over Texas water rights or any authority to affect directly Texas water rights. . . .  What the federal court does and what the state court does are two different things.  No more than I can tell a federal judge what to do can a federal judge tell me what to do, except in certain very limited things that are not at issue in this case.

U.S. Ex. E at 27-28 (May 24, 1999 hearing).  In another hearing, Judge Valentine said:

> [W]e have a third amended complaint that specifies what they're talking about. And there's nothing else before the Court right now, except what is specified in paragraph two.  And it says from the Elephant Butte Dam on the north to the Texas state line on the south.

U.S. Ex. L at 187 (Feb. 4, 1996 hearing).  According to the United States, these quotes mean that the state court has acknowledged that it does not have jurisdiction over the Texas portion of the Rio Grande or over water stored in Elephant Butte Reservoir.

It may be correct that the latest amended complaint in state court fails to include the water of Elephant Butte Reservoir, and that the state judge has expressed his understanding that the

---

[9]  Calling this a "unique document generated for the sole purpose of supporting the New Mexico Defendants' claim that the state water rights adjudication includes the waters stored in Elephant Butte Reservoir," U.S. M/Submit Sur-Reply at 2, and "not credible," U.S. Mem. in Supp. M/Submit Sur-Reply at 3, the United States casts aspersions on the motivation of the State.  In its adamant opposition to this document, the United States reveals the depth of its resistance to state court jurisdiction that the McCarran Amendment mandates.  If the State is willing to include in the adjudication the United States' claim to ownership rights in the water stored in the Elephant Butte Reservoir, the United States might welcome that accommodation rather than vociferating against it.

adjudication presently is so limited, but that is a far cry from a final ruling that the state court lacks jurisdiction to determine a storage water right in the reservoir water, within the meaning of footnote 21 in San Carlos Apache ("a decision by a state court that it does not have jurisdiction over some or all" of the claims involved in the federal case. 463 U.S. at 570 n.21).

The absence of the Texas water districts in the New Mexico state court adjudication is of no moment because the Texas portion of the Rio Grande is the subject of an existing adjudication in the Texas system. Additionally, judging from the accommodating ruling already made by the state court,[10] it is likely that the Texas districts would be allowed to intervene in the New Mexico state court case if they so choose.

The United States complains that it is being forced to litigate its Rio Grande Project rights in fora in both New Mexico and Texas, thus leading to piecemeal litigation as far as it is concerned. But even if this Court retained jurisdiction of the quiet title action, the parties would still have to participate in the two state cases, in addition to this federal court action, multiplying costs and efforts for all. Moreover, logic and good sense belie the idea that requiring the United States to assert its Rio Grande Project water rights in two comprehensive state law adjudications somehow is unfair. If that were so, then no state adjudication could occur if it involved water of an interstate stream. The Supreme Court has rejected this notion:

> We deem almost frivolous the suggestion that the Eagle and its tributaries are not a
> 'river system' within the meaning of the [McCarran Amendment]. No suit by any

---

[10]  *See* Ex. C to N.M. Brief in Supp. of M/Dis Counterclaim, Elephant Butte Irr. Dist. v. Turney, No. CV 96-888 (N.M. Dist. Ct. Mar. 11, 1997) (Order Granting Leave For Amicus Curiae Participation).

16

state could possibly encompass all of the water rights in the entire Colorado River
which runs through or touches many states.  The 'river system' must be read as
embracing one within the particular State's jurisdiction.

United States v. District Court for Eagle County, 401 U.S. 520, 523 (1971).  It is enough that the

United States' Rio Grande Project water rights, whatever they may be, as acquired or

appropriated under the laws of either New Mexico or Texas, or both, will be fully determined and

declared in the two ongoing state proceedings.

The United States also asserts that, unlike a quiet title action, the New Mexico

adjudication process makes no effort to determine the legal owner of a water right, because

ownership is not an element of the decree in a water rights adjudication.  In support of this

proposition, the United States cites N.M. Stat. Ann. 1978 § 72-4-19 (Repl. Pam. 1997).  It is true

that this section of the New Mexico water statutes sets out only the five elements of priority,

amount, purpose, periods and place of use, and - as to water used for irrigation - the specific

tracts of land to which the right is appurtenant.  But I disagree with the United States' contention

that ownership is not also determined in a water adjudication.  If that were so, there would be no

need to join all the purported owners as defendants or to make offers of judgment specifically to

each of them.  See § 72-4-17 (all claimants to use of waters of stream system must be made

parties to adjudication); § 72-4-19 (elements of water right must be declared "as to the water

right adjudged to each party").

The United States makes the point that the scope of the federal case is narrower than that

of the state adjudication because the federal case seeks only a declaration quieting title to its rights

in the Rio Grande Project water as against the named defendants, not an adjudication of the

relative priority and amount of its rights against the rights of all others.  This is not helpful to the

United States.  It may be that the United States needs only an order quieting title to its rights as against the named Defendants who assert claims adverse to those rights instead of a complete adjudication of its rights like the one going on in state court.  This aspect of the argument merely points out how maintaining this case results in piecemeal litigation in the face of the more comprehensive state adjudication.  If there is true urgency for an early decision on the United States' claims because a few parties have clouded its alleged title to Project water rights, the proper way to address that would be to assert those claims in the state court case and ask for expedited treatment.

For these reasons I conclude that the proceedings in this federal court action and in the state court adjudication are parallel within the meaning of <u>Moses H. Cone</u> and Tenth Circuit case law.

In favoring the state court adjudication, the Supreme Court in <u>Colorado River</u> discussed other significant factors, including the relative progress of the two proceedings, the extensive involvement of state water rights in the federal proceeding, the relative inconvenience of the federal forum, and the already existing participation of the United States in state proceedings. <u>Colorado River</u>, 424 U.S. at 820.

These other factors, Defendants argue, also counsel in favor of dismissal of this federal case.  The state case, filed 14 years ago, is much farther along.  The United States has been and still is participating in that case.  Also, proceeding in both federal and state fora would be costly and inconvenient for those water rights claimants already involved in both cases; and it would be even more so for the many thousands of parties to the state adjudication who might have to be

joined in this federal court action as indispensable parties.[11]  The federal court, based in
Albuquerque, is geographically distant from the area covered by the claims asserted in both the
state and federal cases.  Moreover, Defendants argue, state water law issues predominate.  The
United States acquired its rights to use water for the Rio Grande Project under the Reclamation
Act, and the Reclamation Act requires deference to state water law regarding the acquisition of
water rights.

   The United States disagrees that the other Colorado River factors favor dismissal.  First, it
says the federal forum is not inconvenient for the existing seven Defendants because three of them
are Texas entities represented by counsel in Santa Fe, New Mexico and because there is a federal
courthouse located in southern New Mexico in Las Cruces, the same city where the state court, in
which the state adjudication is pending, is located.  Although the Court could travel to Las Cruces
for hearings, it sits in Albuquerque, some 150 to 220 miles from the reach of the Rio Grande
involved.  No district judge has a designated duty station in Las Cruces and no district judge has
assigned chambers or courtroom in the federal courthouse in Las Cruces.  Thus this factor
supports dismissal of the federal case.

   The United States also argues that not much progress has been made in the state case even
though it has been pending much longer.  The latest amended complaint in state court, which
aligned the State Engineer as the plaintiff, was filed after the federal case commenced.  As of
March 2000 only two of the anticipated five hydrographic survey reports had been filed with the
state court, which are needed to formulate offers of judgment for the many thousands of

---

[11]  The United States alleges that the named parties have clouded its title merely by asserting
ownership of water rights in the Rio Grande Project.  The numerous individual members of EBID, like
Defendants NMSU and Stahmann Farms, will undoubtedly assert such ownership.

claimants.  In fact the State Engineer's Office had mailed only 500 offers of judgment to defendants.  Additionally, the state case will continue for many years and will require the expenditure of millions of dollars.  Thus, reasons the United States, the adjudication of claims in the state proceeding is not so far along that continuing to proceed in this case would significantly impact or impair it.

It is manifest that the progress of the state case far exceeds that of this federal action. During the 14 years the state case has been pending, numerous jurisdictional issues have been resolved in both the state district court and the state court of appeals.  The State Engineer's comprehensive hydrographic survey of the many thousands of water users is already about 70% complete, and joinder of the estimated 25,000 water rights claimants is well underway.  *See* Aff. Chavez, Ex. A to NM Mem. in Supp. M/Dis.  The state case had been pending 11 years by the time the United States filed this action on June 12, 1997.  The judge to whom this action was originally assigned made no substantive rulings during the first nine months before recusing.  After reassignment to a new judge in March 1998, an order entered April 15, 1998 adopted the parties' proposed mediation plan.  On June 2, 1998 the Court, by order, appointed a mediator to whom the parties had agreed.  Mediation efforts extended over 18 months.[12]  Other proceedings in the case were stayed pending mediation.  By order entered November 30, 1999, the stay was lifted. An extended period of briefing of various motions ensued.  The issue of indispensable parties to this action is contested and has not been decided, but the joinder of additional parties would be likely.  Several parties have filed motions to intervene, now fully briefed, which are pending.

---

[12]  Unfortunately, despite extensive efforts involving many meetings, the mediator was unable to guide the parties to a resolution of all disputes.

Thus, this case has not progressed much beyond the filing of the complaint, answers, motions to dismiss and motions to intervene.

Finally, the United States argues for retention of this case because it involves important federal interests, and because its Rio Grande Project rights have their genesis in federal law and in the important federal concerns of fulfilling interstate and international responsibilities. The United States cites Moses H. Cone, which rejected dismissal stating "the presence of federal-law issues must always be a major consideration weighing against surrender." 460 U.S. at 25. I need not decide whether state law or federal law will control the issues surrounding the United States' claims to water under the Rio Grande Project.[13] Even though application of federal law and the presence of important federal interests were prominent in Colorado River and paramount in San Carlos Apache and Bluewater-Toltec, the courts in all three cases required dismissal in favor of the state water adjudications. It is a conspicuous fact that all three of those cases, like this one, were water law cases involving McCarran Amendment considerations.

I conclude that the Colorado River Doctrine should be applied to dismiss this case in favor of the ongoing comprehensive state water adjudications.

### B. Declaratory Judgment Discretion

Even if the "exceptional circumstances" test of Colorado River were not met, there is another doctrine that favors dismissal of this action. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*,[14] the "virtually unflagging obligation of the federal courts to exercise

---

[13] I note, however, that state water law issues will be important because the United States made its appropriations of water by complying with New Mexico water law.

[14] In its Complaint the United States cites other bases for federal jurisdiction besides the Declaratory Judgment Act, including 28 U.S.C. §§ 1331 and 1345, the general provisions conferring

the jurisdiction given them," <u>Colorado River</u>, 424 U.S. at 817, does not apply.  In <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995) the Supreme Court stated, "[d]istinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of <u>Colorado River</u> and <u>Moses H. Cone</u>."  515 U.S. at 286.  The language of the Act itself makes the exercise of jurisdiction discretionary.  It provides that a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (emphasis added).

Under the principles announced in <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491 (1942), declaratory relief should not be granted by a federal court "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  <u>Id.</u> at 495.  Federal courts, before assuming jurisdiction in declaratory actions, should consider such factors as whether the federal case presents the same issues found in the state court proceeding, whether the state court is better able to settle the controversy, whether the state court can adjudicate all claims, and whether the necessary parties are amenable to process and can be joined in the state court proceeding.  <u>Id.</u>[15]  The decision to defer to a state court is guided by "considerations of practicality and wise judicial administration."  <u>Wilton</u>, 515 U.S. at 288.  "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a

federal jurisdiction for federal questions and over most civil actions brought by the Federal Government. However, its prayer for relief is exclusively for declaratory judgment.

[15]  The Supreme Court in <u>Wilton</u> resolved a controversy among the circuits over the applicability of <u>Brillhart</u> after <u>Colorado River</u> by ruling that the discretionary standard of <u>Brillhart</u> still applies to federal declaratory judgment actions.  The Court noted that neither <u>Colorado River</u> nor <u>Moses H. Cone</u> involved declaratory judgment actions.  <u>Wilton</u>, 515 U.S. at 286.

declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Id. at 282 (*quoting* Brillhart, 316 U.S. at 495). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Brillhart, 316 U.S. at 494.

In addition to the factors enumerated in Brillhart, the Tenth Circuit has set forth five factors that a court should consider in determining whether to entertain a declaratory judgment action:

> (1) whether a declaratory judgment action would settle the controversy;
> (2) whether it would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*';
> (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Qwest Communications Int'l, Inc. v. Thomas, 52 F. Supp.2d 1200, 1207 (D. Colo. 1999) (*quoting* St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995) *and* State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994)); *see also* ARW Exploration Corp. v. Aguirre, 947 F.2d 450, 454 (10th Cir. 1991).

Applying these factors to the present case convinces me that this declaratory judgment case should be dismissed in accordance with the teaching of Brillhart. This case presents issues that are present in the water adjudication pending in state court, but that case is much more comprehensive. Even though federal interests in water are involved, it is unlikely that those interests are governed by federal law because the United States gained whatever interests it has in water for the Rio Grande Project under the Reclamation Act by complying with New Mexico

water law.[16]  While two of the Texas Defendants in this case are not involved directly in the state

court case, all the rest of the parties are, and the two Texas irrigation districts could probably

intervene.

Additionally, because of the interrelated nature of water right claims, and because any

determination in this case of the United States' rights to divert, impound, and store the waters of

the Rio Grande Project will not be binding on parties not joined in this action, this case will not

settle the controversy.  Maintaining concurrent cases in federal and state court would advance

neither judicial economy nor the economics affecting those parties involved in both cases.  Rather

than alleviating the need for the concurrent state action, this case merely adds to the burden of the

state litigants because they may have to assert their rights, the same rights, in both state and

federal court.  Even if the limited interests claimed by the United States in this case could be

decided more expeditiously than in the cumbersome and slow-moving adjudication in state court,

it is not proper and maybe not even possible simply to carve out one series of issues from that

adjudication for fast-track treatment in a different jurisdiction.  A federal court "should not

entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent

issues are likely to be decided in another pending proceeding."  St. Paul Fire & Marine, 53 F.3d at

1169.  If such culling of discreet claims is possible, it can and should be done in the state case.


Also, I am concerned that the United States may be using this case for "procedural

fencing."  Since the inception of the state adjudication, the United States has attempted to avoid

_____

[16]  Section 8 of the Reclamation Act of 1902 authorizes the United States to appropriate water for
projects like the Rio Grande Project "in conformity with" state water law.  43 U.S.C. § 383.

the jurisdiction of the state court on several occasions.  These efforts have been rebuffed in state district court, which rejected the jurisdictional arguments several times, in federal district court, which remanded the case back to state court after it had been removed, and in the New Mexico Court of Appeals, which rejected the United States' argument that the McCarran Amendment did not apply to the state court adjudication.  I find it significant that the United States filed this federal court action shortly after losing on the issue of jurisdiction the last time in state court.

The danger of creating friction between federal and state courts is another factor that counsels abstention.  The state adjudication began in 1986, more than 10 years before this case was commenced.  Adjudication of the water rights within a stream system is "peculiarly appropriate for comprehensive treatment" in the state forum, which has "the greatest experience and expertise, assisted by state administrative officers acting under the state courts."  Moses H. Cone, 460 U.S. at 16.  Although the federal interests are important, they will probably be decided according to New Mexico water law.  To have a federal court decide the nature and scope of those interests makes little sense in the overall scheme of adjudication of water rights created under state law.

Finally, applying the fifth factor, although it may take longer, the state remedy certainly will be more effective because it will provide a more comprehensive and cohesive remedy for all parties, including the United States and the Defendants involved in this case.  It will also produce a final remedy, whereas in the federal case there is a grave concern that whatever declaration would be forthcoming would not enjoy finality.  Bifurcation of the federal interest may seem preferable for the United States, but the New Mexico Defendants argue convincingly that it is not preferable for them, and surely it is not good for the parties in the state case who are not present,

25

and have had no voice, in this action.  Rather, it would result in piecemeal litigation, a result

abhorred by the architects of the McCarran Amendment.  *See* <u>Colorado River</u>, 424 U.S. at 819;

<u>Moses H. Cone</u>, 460 U.S. at 16; <u>Bluewater-Toltec</u>, 580 F. Supp. at 1443.  To avoid "gratuitous

interference" with the orderly and comprehensive disposition of the state court adjudication,

<u>Wilton</u>, 515 U.S. at 283, I believe it behooves me to dismiss this case.

### IV.  MOTIONS CHALLENGING COUNTERCLAIM AND CROSS-CLAIM

The counterclaim against the United States and cross-claim against EBID filed by

EPCWID requests that the Court "adjudicate and decree" EPCWID's contractual rights regarding

some 36 water storage and delivery contracts it executed with the United States under

reclamation law.  EBID is a party to some of the same contracts, and to other contracts between

just it and the United States.

The thrust of the counterclaim is that EPCWID believes it is entitled to better quality

water than it is presently receiving.  The quality of EPCWID's water is allegedly impaired by

upstream water users, members of EBID, who use good-quality water from reservoir storage, and

who use groundwater from shallow wells which depletes the surface water in the river bed.  On

the other hand, EPCWID members are relegated to using "return flows" that are high in salinity

and total dissolved solids.  Specifically, EPCWID alleges that the United States has violated its

contractual duties and has abused its discretion by delivering inferior and sometimes unusable

quality water to EPCWID, by not making deliveries of water continuously over a 12-month

period, by failing to account properly for water deliveries, by failing to require EBID to account

for the water its members use, both surface water and groundwater, by requiring EPCWID to

take degraded quality return flows while EBID gets higher quality water directly from the

reservoirs, and by failing to allow EPCWID to receive its fair share of the stored waters of the Rio Grande Project.  Countercl. ¶¶ 79, 88.  EPCWID also alleges that the United States should assert an earlier priority date for its Rio Grande Project water rights using a relation-back theory.  ¶¶ 60, 91-94.

### A.  Motion For More Definite Statement As To Cross-Claim

EBID moves for a more definite statement as to the cross-claim, calling it vague and ambiguous.  EBID contends that it is unable to frame a responsive pleading because it is unclear what claim EPCWID is asserting against EBID.  The allegations of the counterclaim and the cross-claim are lumped together in the pleading, causing confusion as to just what relief is sought against EBID.

According to the allegations of the cross-claim, EBID "claims an interest in the allocation and delivery of Project water."  Countercl. ¶ 58.  By contract, EBID operates and maintains that part of the Rio Grande Project within its district boundaries, and it now owns the irrigation facilities such as ditches, laterals, canals, drains and other improvements located within the district.  ¶¶ 68, 69.  It is alleged that the United States Bureau of Reclamation allocates the waters of the Rio Grande Project between EPCWID and EBID and releases water stored in the Project reservoirs for use by the irrigation districts and their members in both New Mexico and Texas. ¶ 70.  It is further alleged that EPCWID complained to the Bureau of Reclamation and to EBID when it discovered inequities in the methods of allocation and accounting by the United States of Rio Grande Project water, and demanded that the inequitable treatment cease, but the Bureau of Reclamation, "with the concurrence of EBID," has continued to employ the improper methods. ¶¶ 87-88.  It appears, however, that the cross-claim fails to accuse EBID of any wrongdoing and

27

asks for no relief against EBID.

In its response, EPCWID states that the cross-claim relates to Rio Grande Project water rights, and that EBID was named as a party because the relief EPCWID seeks against the United States may affect EBID's interests.  For example, EPCWID requests the Court to construe the obligations of the United States under some of the same contracts to which EBID is also a party. EBID has been joined so it may contest the allocations and accountings of Rio Grande Project water by the United States sought by EPCWID in the counterclaim, and so that EBID will be bound by and required to conform to any relief granted by the Court.  Admittedly, then, EPCWID seeks no relief against EBID directly.

In reply, EBID contends it is improper to bring a cross-claim against a party against whom no relief is sought.  It also argues that without any factual allegations in the cross-claim describing what EPCWID wants the Court to construe relating to the few contracts to which both EBID and EPCWID are parties, EBID is unable to frame a responsive pleading.  EBID requests that the cross-claim be dismissed because, in essence, EPCWID asserts no claim against it.

It may be that the relief EPCWID seeks against the United States could affect EBID's interests, so that EBID would be allowed to intervene under Fed. R. Civ. P. 24 to protect its interests if it so chose.  But EBID cannot be kept as a party against its wishes because no claim is stated against it.

I find that EPCWID states no claim against EBID, and seeks no relief against EBID. Therefore, I conclude that the cross-claim against EBID should be dismissed

**B.  Motion to Dismiss Counterclaim**

The State of New Mexico moves to dismiss the counterclaim on several grounds.  First,

the State argues that the counterclaim directly impacts water rights issues already being litigated in the New Mexico state court adjudication, and that the Court should defer to the state adjudication under the Colorado River Doctrine.  Next, it argues that some part of the counterclaim constitutes an *in rem* action affecting water rights located in Texas, over which this Court lacks jurisdiction.  Thus, the Court should apply the Colorado River Doctrine and defer on those issues to the pending administrative proceeding in Texas.  Finally, the State argues that the counterclaim is really a suit against the State of New Mexico that is barred by the State's Eleventh Amendment immunity.

The State's Colorado River arguments are premised on the notion that EPCWID is really asking for an adjudication of its water right, because it is asserting a right to receive water, which is the essence of a water right.  The State identifies seven elements of a water right in New Mexico, N.M. Stat. Ann. 1978 § 72-4-19 (ownership, priority, amount, purpose, period of use, place of use, and other conditions), and shows how the counterclaim may be construed as asserting six of these seven elements (all but "purpose").  Since the relief sought in the counterclaim would have far reaching effects on thousands of other water users, affecting the amounts of water available for their use, the State argues that maintenance of the counterclaim would result in piecemeal litigation with regard to these interrelated water rights on the stream system, a result the McCarran Amendment was enacted to prevent.

Although the Colorado River Doctrine and McCarran Amendment arguments are enticing, I cannot accept them.  The counterclaim is styled as a contract action, and thus is not the same as the adjudication of water rights that is ongoing in state court.  Water quality is not an element of a water right under New Mexico law.  Even though all water issues are in some way interrelated,

29

EPCWID does not appear to be asking for a determination of water rights per se.  Thus the subject of the counterclaim does not appear to be necessarily connected to the state court adjudication.

For example, EPCWID contends that the United States has failed under its contracts to account for the groundwater pumping done by EBID's members in New Mexico.  The State points out that groundwater pumping in New Mexico is regulated by the New Mexico State Engineer through a permit system in accordance with statute.  But as I read the counterclaim, EPCWID is not saying the pumping should not be allowed, just that the United States should account for the amount pumped in its calculations.

EPCWID also argues that if the counterclaim were to result in a judgment that the United States' contracts require the United States to deliver to EPCWID more or better quality water than the United States can do with its present water rights, then the United States would have to take action to obtain the required additional rights to avoid being in breach of the contracts. EPCWID contends that its only interest is in securing a determination of the contract obligations between it and the United States, not in having the particular water rights of the United States decreed.  The latter is what is ongoing in the state case; the former is for decision by the federal court.  I conclude that the McCarran Amendment does not require dismissal of the counterclaim because the issues are not the same as those being adjudicated in state court.

Also, EPCWID has avoided requesting any relief from the State of New Mexico or the State Engineer.  Although the United States may not have the power to rectify all of the problems alleged by EPCWID, a federal court may still be able to declare whether or not the United States is violating its contractual duties to EPCWID and order whatever relief might be appropriate

without impacting the State's immunity.

Although I reject the grounds upon which the State of New Mexico seeks dismissal, there is another reason that compels me to dismiss or transfer the counterclaim.  The sovereign immunity of the United States has been waived for actions, such as this one, to "adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law."  43 U.S.C. § 390uu.  This so-called Reclamation Reform Act of 1982 contains a specific venue provision:  "Any suit pursuant to this section may be brought in any United States district court in the State in which the land involved is situated."  Id.

The counterclaim alleges that the "land involved is the land of the Rio Grande Project, of which land a substantial portion is situated in" New Mexico.  Countercl. ¶ 52.  This allegation is contrary to the undisputed fact that EPCWID has no interest in land in New Mexico.  EPCWID is a Texas entity, and its members are irrigators whose land is located in Texas.  *See* ¶ 53 (contracts are for storage and delivery of water "to EPCWID for use in Texas."); ¶ 74 (part of land benefitted by Rio Grande Project lies "within EPCWID, in Texas.").  The irrigation facilities such as ditches, laterals, and canals owned and operated by EPCWID as part of the Rio Grande Project are located within the State of Texas, although it receives its allotted water at diversion points located in both New Mexico and Texas.

The parties have not discussed this venue provision in their briefs.  Given the limited nature of waivers of sovereign immunity, it is not appropriate to assume this venue provision can be waived.  Construing the plain language of the venue portion of this statute waiving the sovereign immunity of the United States, I believe EPCWID's counterclaim, which involves land

31

situated in Texas, should have been brought in a federal court in Texas.  Accordingly, I will

dismiss without prejudice the counterclaim and cross-claim unless, within the deadline of

September 5, 2000, EPCWID petitions this Court to transfer the case to the appropriate federal

district court in Texas.  *See* New Mexico ex rel. Energy and Minerals Dep't v. U.S. Dep't of

Interior, 820 F.2d 441, 446-47 (D.C. Cir.1987) (discussing transfer versus dismissal when venue

improper).


THEREFORE, IT IS ORDERED that the motions to dismiss the Complaint are

GRANTED IN PART on the grounds of the Colorado River Doctrine and Brillhart abstention;

IT IS FURTHER ORDERED that EBID's Motion For More Definite Statement As To

the Cross-Claim is construed as a motion to dismiss, and is GRANTED, and the cross-claim is

dismissed as to EBID;

IT IS FURTHER ORDERED that the State of New Mexico's Motion to Dismiss the

Counterclaim and Cross-Claim will be GRANTED unless Counterclaimant El Paso County Water

Irrigation District No. 1 files a request for transfer of venue by September 5, 2000.

A separate Order of Dismissal of the Complaint will be entered concurrently with entry of

this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE


Counsel for Plaintiff United States:  John W. Zavitz, AUSA, Albuquerque, N.M.; Bradley S. Bridgewater,
Lynn A. Johnson, R. Lee Leininger, US DOJ, Env't & Natural Resources Div., Denver, CO,

Counsel for Defendant Elephant Butte Irr. Dist.:  Beverly J. Singleman, Steven L. Hernandez, Stephen A.
Hubert, HUBERT & HERNANDEZ, Las Cruces, N.M.

Counsel for Defendant El Paso County Water Imp. Dist.:  Rebecca A. Dempsey, Benjamin Phillips, Paul L. Bloom, WHITE, KOCH, KELLY & MCCARTHY, Santa Fe, N.M.; Peter B. Shoenfeld, Santa Fe, N.M.; James M. Speer Jr., El Paso TX; Risher Gilbert, GILBERT & COFFEY, El Paso, TX

Counsel for Defendant Hudspeth County Conservation and Reclamation Dist:  Neil C. Stillinger, Santa Fe, N.M.; Phillip C. Bowen, JOHNSON & BOWEN, El Paso, TX; Brian E. Berwick, George Thomas Bohl, Fred A. Helms, Texas Atty. Gen., Nat. Res. Div., Austin, TX

Counsel for Defendant City of El Paso:  Rebecca A. Dempsey, Benjamin Phillips, Paul L. Bloom, WHITE, KOCH, KELLY & MCCARTHY, Santa Fe, N.M.

Counsel for Defendant New Mexico State Univ.:  Luis G. Stelzner, John W. Utton, SHEEHAN, SHEEHAN & STELZNER, Albuquerque, N.M.; Charles T. DuMars, Christina Bruff DuMars, LAW & RESOURCE PLANNING ASSOCIATES, Albuquerque, N.M.

Counsel for Defendant Stahmann Farms:  Joel T. Newton, MILLER, STRATVERT, TORGERSON & SCHLENKER, Las Cruces, N.M.; Ralph William Richards, El Paso, TX

Counsel for Defendant State of New Mexico:  Gregory C. Ridgley, Edward J. Apodaca, Susanne Hoffman-Dooley, Dana David, NM State Eng. Ofc., Legal Div., Santa Fe, N.M.

Counsel for City of Las Cruces:  Jay F. Stein, SIMMS & STEIN, Las Cruces, N.M.