UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                        No. 97 CV 0803 JAP/RPL

ELEPHANT BUTTE IRRIGATION DISTRICT,
EL PASO COUNTY WATER IMPROVEMENT
DISTRICT NO. 1,
HUDSPETH COUNTY CONSERATION and
RECLAMATION DISTRICT NO. 1,
CITY OF EL PASO,
CITY OF LAS CRUCES,
NEW MEXICO STATE UNIVERSITY,
STAHMANN FARMS, INC., and
STATE OF NEW MEXICO *ex rel.* STATE ENGINEER,

    Defendants.

MEMORANDUM OPINION AND ORDER
DENYING JAMES SCOTT BOYD'S RENEWED MOTION TO INTERVENE

On September 4, 2014, James Boyd (Boyd) filed JAMES SCOTT BOYD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NATHAN BOYD, DECEASED'S, RENEWED MOTION TO INTERVENE and MOTION TO LIFT ITS AUGUST 15, 2002 STAY (Doc. No. 288).[1] Also on September 4, 2014, Sammie Singh, Sr., Sammie Singh, Jr., Thomas White, Johnny Diaz, Ed Provencio, and Lupe Garcia (the Claimants) filed THE PRE-1906 CLAIMANTS IN THE LOWER RIO GRANDE STATE WATER ADJUDICATION'S MOTION TO INTERVENE (Doc. No. 288-1). The Court will refer to Boyd's Motion and the Claimants' Motion collectively as the Motion. The Court also considered the 82-page Memorandum in Support of the Motion. (*See* Doc. No. 288-2.) Because

---

[1] The Motion renews Boyd's original motion to intervene filed on March 30, 1998. (*See* Doc. No. 137.)

the Court will deny the Motion on the merits, Boyd's and the Claimants' motions for leave to exceed the page limits under the local rules will be granted.[2]

Three responses to the Motion were filed: 1) the STATE OF NEW MEXICO'S RESPONSE IN OPPOSITION TO (1) JAMES SCOTT BOYD'S RENEWED MOTION TO INTERVENE AND MOTION TO LIFT AUGUST 15, 2002 STAY, (2) PRE-1906 CLAIMANTS' MOTION TO INTERVENE AND (3) MOTION TO EXCEED PAGE LIMITS (Doc. No. 311) (the State Response);[3] 2) PLAINTIFF UNITED STATES' RESPONSE TO JAMES SCOTT BOYD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NATHAN BOYD, DECEASED'S, RENEWED MOTION TO INTERVENE AND THE PRE-1906 CLAIMANTS IN THE LOWER RIO GRANDE STATE WATER ADJUDICATION'S MOTION TO INTERVENE AND MOTION TO LIFT AUGUST 15, 2002 STAY (Doc. No. 312) (the United States Response);[4] and 3) CITY OF LAS CRUCES' RESPONSE IN OPPOSITION TO JAMES SCOTT BOYD'S RENEWED MOTION TO INTERVENE AND MOTION TO LIFT AUGUST, [sic] 2002, STAY, THE PRE-1906 CLAIMANTS' MOTIONS TO INTERVENE, MEMORANDUM IN SUPPORT, AND MOTION TO EXCEED PAGE LIMITS (Doc. No. 313) (the Las Cruces Response).[5]

On October 7, 2014, Boyd and the Claimants filed REPLY IN SUPPORT OF CLAIMANTS' MOTION TO LIFT STAY, INTERVENE AND EXCEED PAGE LIMITS (Doc. No. 317).

---

[2] There were two motions filed for this purpose: (1) MOTION TO EXCEED PAGE LIMITS (Doc. No. 286) filed by Boyd and (2) MOTION TO EXCEED PAGE LIMITS (Doc. No. 287) filed by the Claimants.

[3] The State also incorporates the arguments set forth in its Response to Boyd's original motion to intervene filed in 1998. (*See* Doc. No. 140.)

[4] The United States also incorporates the arguments set forth in its Response to Boyd's original motion to intervene filed in 1998. (*See* Doc. No. 138.)

[5] The City of Las Cruces also incorporates the arguments set forth in its Response to Boyd's original motion to intervene. (*See* Doc. No. 141.)

I. Background

    A. *This Lawsuit*

On June 12, 1997, the United States filed this action to quiet title to water rights related to the Rio Grande Project (Project). The Project is a network of dams, reservoirs, canals, and other water storage and delivery facilities by which the United States, through the Bureau of Reclamation, stores and delivers water from the lower Rio Grande basin for irrigation and other purposes. Water from the Project is delivered to areas in southern New Mexico, western Texas, and northern Mexico under a treaty. The United States asserted the right to divert, store, and deliver the waters of the Rio Grande and its tributaries from Elephant Butte Reservoir to Fort Quitman, Texas. The United States sued the Elephant Butte Irrigation District (EBID), El Paso County Water Improvement District No. 1 (EPCWID), the City of El Paso (El Paso), Hudspeth County Conservation and Reclamation District No. 1 (Hudspeth), New Mexico State University (NMSU), Stahmann Farms, Inc. (Stahmann), and the New Mexico State Engineer (State Engineer), alleging that these defendants had clouded the United States' title to Project water.

On November 18, 1997, the Court granted the uncontested motion to intervene filed by the City of Las Cruces (Las Cruces). There were additional contested motions to intervene, one of which was filed by Boyd. *See* MOTION TO INTERVENE AND TO FILE COUNTER-CLAIM FOR DECLARATORY JUDGMENT AND EJECTMENT OF JAMES SCOTT BOYD, ADMINISTRATOR OF THE ESTATE OF NATHAN BOYD AND MEMORANDUM IN SUPPORT (Doc. No. 137). On August 22, 2000, however, the Court dismissed the United States' complaint and denied as moot Boyd's motion to intervene. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 245) at 3 n. 4.

B. *The Rio Grande Project*

On February 25, 1905, the Project was authorized by Congress under the Reclamation Act of 1902, 43 U.S.C. § 371 *et seq*. The Project encompasses two dams (Elephant Butte and Caballo), two reservoirs, a power generating plant, six diversion dams, 139 miles of canals, 457 miles of laterals, and 465 miles of drains. These structures are used to deliver water for irrigation of farmland, power generation, municipal and industrial use, recreation, and fish and wildlife. The United States' obligations to deliver water come from two major sources: (1) a 1906 treaty with Mexico under which the United States, through the International Boundary and Water Commission, must deliver 60,000 acre feet of water each year to Mexico; and (2) the 1948 Rio Grande Compact (the Compact), an interstate compact among Colorado, New Mexico, and Texas, under which the waters of the Rio Grande above Fort Quitman, Texas must be equitably apportioned among those states.

In this declaratory judgment action, the United States alleged that the defendants' claims to Project water were interfering with the United States' obligations under the Compact. In addition, the United States sought a judgment requiring the State Engineer to supervise the measurement, appropriation, and distribution of the waters in the State of New Mexico. On September 8, 1997, the Court stayed this proceeding to allow mediation, which was pursued for over two years. The Court lifted the stay on November 30, 1999, and several previously filed motions to dismiss were briefed.

On August 22, 2000, the Court dismissed the case under the *Colorado River* doctrine [6] and alternatively, under the *Brillhart* abstention doctrine to allow the parties to present their claims in a pending water adjudication proceeding in New Mexico state court.[7] *See* MEMORANDUM OPINION AND ORDER (Doc. No. 245) (finding that the United States' claims were more akin to a request for a declaratory judgment regarding the rights to waters of the Rio Grande and its tributaries).[8]

The United States, El Paso, and EPCWID appealed the Court's decision. On July 25, 2002, the Tenth Circuit Court of Appeals upheld the Court's decision to abstain under *Brillhart*. *United States v. City of Las Cruces et al.*, 289 F.3d 1170, 1175 (10th Cir. 2002). However, the Tenth Circuit noted that the Court failed to articulate why it decided to dismiss the action rather than stay it. *Id.* Consequently, the Tenth Circuit vacated the Court's dismissal and remanded the case with instructions to "consider the propriety of a stay." *Id.* On remand, the Court held a hearing and stayed this proceeding to avoid interfering with water adjudications in New Mexico and Texas. The Court also closed the case for administrative purposes but provided, "should further proceedings become necessary or desirable during the pendency of the water adjudications . . ., any party may initiate proceedings as though the case had not been closed for administrative purposes." *See* ORDER (Doc. No. 281) (the Stay Order).

---

[6] In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the United States sued in federal court, naming 1000 water users as defendants, to determine the United States' water rights and the water rights of two Indian tribes in Colorado. After one of the defendants sought an order requiring the United States to join as a party in Colorado state water division proceedings, several parties sought dismissal of the federal case. They argued that in the McCarran Amendment, Congress had repealed federal court jurisdiction for water rights cases. Without reaching the jurisdictional issue, the district court dismissed the federal case on traditional abstention grounds. The Tenth Circuit reversed, but the Supreme Court reversed the Tenth Circuit and affirmed the dismissal. The Supreme Court ruled that federal and state courts had concurrent jurisdiction over water rights adjudication but that the federal lawsuit should be dismissed in favor of the more comprehensive state court proceeding. *Id.* at 817.

[7] Under the principles announced in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), declaratory relief should not be granted by a federal court "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495.

[8] The MEMORANDUM OPINION AND ORDER (Doc. No. 245) disposed of numerous motions to dismiss the complaint, a motion for a more definite statement as to the cross-claim brought by EPCWID against EBID, and a motion to dismiss the counterclaim brought by EPCWID against the United States.

In the Motion, Boyd and the Claimants ask the Court to reopen this proceeding and allow intervention to "resume this Court's previous inquiry into the ownership rights of [Boyd and Claimants] . . . in the Lower Rio Grande Valley in New Mexico. . . ." (Mot. at 2.) Boyd asserts that the state court water adjudication is rife with "concerted procedural actions" that have prevented the acknowledgment of the late 19th Century property rights of Boyd's predecessor, Dr. Nathan Boyd, which were "vested by their construction and beneficial use of their irrigation and diversion works in the [Lower Rio Grande.]" (*Id.*)

### C. *The Lower Rio Grande Adjudication*

In 1986, eleven years before this case was filed, EBID brought a complaint in New Mexico's Third Judicial District Court, Dona Ana County, New Mexico, against the State Engineer, the United States, and El Paso seeking a comprehensive adjudication of the lower Rio Grande. *State of New Mexico ex rel. Office of the State Engineer v. United States, et al.*, CV-96-888 (3d Jud. Dist. Ct. Dona Ana County, NM). EBID sought an injunction to compel the State Engineer to perform a hydrographic stream survey and to compel the United States to set forth all of its claims to water in the lower Rio Grande. EBID named as defendants all known and unknown claimants to waters of the Rio Grande between Elephant Butte Reservoir and the New Mexico-Texas state line. In 1993, after the court denied several motions to dismiss, the state adjudication went forward. The state district court realigned the State Engineer as plaintiff and all water rights claimants including the United States, were realigned as defendants. EPCWID sought to intervene in the proceeding, but later agreed to appear as *amicus curiae*.

### 1. *Boyd's Claims*

On February 1, 2011, the state court entered an "Order Commencing Expedited *Inter Se* Proceeding to Determine the Claims of the Estate of Nathan Boyd." The Order directed Boyd

6

and the Boyd Estate to file statements describing their claimed water rights. On March 4, 2011, Boyd filed a "Statement of Claims" outlining five claims. The first claim was "[a] right to divert 506,720 acre-feet of bi-annual recharge, priority date of 1894, to serve farmers and other water users in the Rincon, Hatch, Mesilla and El Paso Valley, . . . The Boyd Estate also claims the rights to Elephant Butte and Caballo Dams, derived from the Secretary of the Interior's approval in 1895 of the project pursuant to the 1891 Act." The second claim consisted of "[a] right to deliver irrigation water to farmers with pre-existing water rights on the Dona Ana, Mesilla, and Las Cruces Community Ditches through Fort Seldon/Leasburg canal and diversion." Boyd's third claim alleged "[a] right to deliver irrigation water to lands that were not yet served with irrigation water through the Fort Seldon/Leasburg canal and diversion, with a priority [date] of 1897." The fourth claim asserted "[a] right to deliver irrigation water to farmers in the Rincon and Hatch valleys in Dona Ana and Sierra Counties through the West Side, or Percha, diversion and canal, with a priority date of 1894." The fifth claim was "[a] right to deliver irrigation water to farmers in the Lower Mesilla Valley via the Santo Tomas Diversion, or West Side Canal." *See State of New Mexico ex rel. Office of the State Engineer v. Elephant Butte Irrigation District, et al.*, ORDER GRANTING (1) THE UNITED STATES' AND EBID'S AND (2) THE CITY OF LAS CRUCES' MOTIONS TO DISMISS THE CLAIMS OF THE ESTATE OF NATHAN BOYD Case No. CV 96-888, RN-97-2413, Subfile No. LRR 28-099-1001, (3d Jud. Dist. N.M. Feb. 24, 2012) (the February 2012 Order).[9] In the February 2012 Order, the state court detailed the historical events related to Boyd's claims, and those facts are summarized here. *Id.* at pp. 4-7.[10]

---

[9] On October 15, 2014, the New Mexico Court of Appeals affirmed the February 2012 Order. *See Boyd Estate ex rel. Boyd  v. United States, et al.*, No. 32-119, 2014 WL 5285755 (N.M. App. Oct. 15, 2014) (slip op.).
[10] *See also* Susan Kelly et al., *History of The Rio Grande Reservoirs in New Mexico: Legislation and Litigation*, 47 NAT. RES. J. 525, 527–47 (2007) (outlining the history of Elephant Butte and Caballo Dams).

In 1893, Boyd's predecessor, Dr. Nathan Boyd, formed the Rio Grande Dam & Irrigation Company (the RGD&IC) to construct a network of diversion, storage, and distribution facilities to serve the agricultural needs of the Rio Grande valley in southern New Mexico. *Id.* In 1895, the United States Secretary of the Interior granted permits to RGD&IC to construct irrigation works under the 1891 Act of Congress, ch. 561, 26 Stat. 1101, which granted a right of way through public lands "to any canal or ditch company formed for the purpose of irrigation[.]" *Id.* § 18. In 1896, the RGD&IC constructed the Leasburg Diversion Dam and six miles of associated canals to deliver irrigation water. February 2012 Order at p. 4.  However, later that year, the United States, through the Secretary of the Interior, sought an injunction to halt RGD&IC's construction of the irrigation works. The United States argued that under a federal statute enacted in 1890 and amended in 1892, the proposed dam at Elephant Butte would interfere with the navigability of the Rio Grande. *See United States v. Rio Grande Dam & Irrigation Co.*, 9 N.M. 292, 51 P. 674 (N.M. 1898) (citing, 26 Stat. at L. 426, 454, § 10 (1890)).

The state district court issued a temporary injunction, but later dissolved the injunction and dismissed the United States' complaint.[11] The Territorial Supreme Court of New Mexico affirmed the dismissal. *Id.* 51 P. at 679. However, the United States Supreme Court reversed the Territorial court's decision and directed the state district court to make factual findings regarding whether the proposed  Elephant Butte Dam "will substantially diminish the navigability of that stream within the limits of present navigability, and, if so, to enter a decree restraining those acts to the extent that they will so diminish." *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 710 (1899).

---

[11] The district court dissolved the injunction and held the Rio Grande was not a navigable stream within the territory of New Mexico. *United States v. Rio Grande Dam & Irrigation Co.*, 51 P. 674 (N.M. 1898).

On remand, the state district court determined that the proposed Elephant Butte Dam would not substantially diminish the navigability of the Rio Grande and again dismissed the complaint. The Territorial Supreme Court of New Mexico affirmed, but the United States Supreme Court remanded the case to the state district court for further hearings and expressed concerns over the importance of maintaining the navigability of the Rio Grande. *United States v. Rio Grande Dam & Irrigation Co.,* 184 U.S. 416 (1902).

On April 7, 1903, the United States filed a supplemental complaint alleging that the RGD&IC had forfeited its right to construct irrigation works by failing to timely comply with Section 20 of the 1891 Act, which provided, "if any section of said canal, or ditch, shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any uncompleted section. . . ." Act of March 31, 1891, ch. 561, 26 Stat. at 1102. The RGD&IC, represented by attorneys A.B. Fall and William Hawkins, failed to file an answer to the supplemental complaint. On May 21, 1903, the state district court entered a default judgment that the RGD&IC had forfeited all of its rights to construct the irrigation works. Armed with new attorneys, the RGD&IC fought the forfeiture judgment before the Territorial Supreme Court of New Mexico and in the United States Supreme Court. Both courts upheld the forfeiture judgment. *United States v. Rio Grande Dam & Irrigation Co.*, 13 N.M. 386, 85 P. 393 (1906); and *Rio Grande Dam & Irrigation Co. v. United States*, 215 U.S. 266, 275–78 (1909) (holding that the default judgment was valid because the RGD&IC's attorney was personally served with the supplemental complaint).

D. *The Court of Federal Claims*

In the late 1990s, Boyd sued the United States in the Court of Federal Claims, on his own behalf and on behalf of the Boyd Estate. *See Boyd v. United States*, No. 96-476L (Fed. Cl. 1996).

Boyd alleged that the United States' exercise of control over the irrigation project constituted a continual taking of Boyd's property rights without just compensation. The Court of Federal Claims concluded it lacked jurisdiction because Boyd's takings claim accrued on December 13 1909 and Boyd's predecessor failed to file his complaint within the six year statute of limitations. *Boyd v. United States*, No. 96-476L, slip op. at 10 (Fed. Cl. April 21, 1997).

### E. *The Claimants*

The Claimants identify themselves as "successors to the historic farmers in the Lower Rio Grande, who . . . own diversion rights in the [Lower Rio Grande] dating back to 1844 [consisting of ] project, storage and diversion property rights that are the subject of this action." (Claimants' Mot. (Doc. No. 288-1) at 2.) The Claimants assert that the state court has failed to acknowledge their "collective project, storage, water and diversion rights and forced them to separately litigate in piecemeal their collective rights, thus impairing and impeding the [Claimants'] ability to protect their vested collective property interests." (*Id.*)[12]

## II. Discussion

### A. *Brillhart* Abstention

To determine whether to allow Boyd and the Claimants to reopen and intervene in this federal action, the Court must reconsider the propriety of the stay previously imposed under the *Brillhart* abstention doctrine. The Tenth Circuit outlined five factors courts should consider in this determination: (1) whether the action would settle the controversy; (2) whether the action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory

---

[12] In the state water adjudication, the state court denied the Claimants' motion requesting designation of a new stream system issue to adjudicate collectively the "pre-1906 claims to water, storage and diversion rights in the Lower Rio Grande." Noting that similar requests by the Claimants were denied on two previous occasions, the state court ruled that the Claimants had offered no compelling reason that their claims "constitute a steam system issue that would affect a substantial number of claimants or would promote judicial efficiency." *State of New Mexico ex rel. Office of the State Engineer v. Elephant Butte Irrigation District, et al.*, No. CV 96-888, ORDER DENYING PRE-1906 CLAIMANTS' MOTION TO SET STREAM SYSTEM ISSUE 106 (3d Jud. Dist., Dona Ana County, N.M., Apr. 25, 2013).

remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether the declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is a better or more effective remedy. *Qwest Communications Int'l, Inc. v. Thomas*, 52 F. Supp. 2d 1200, 1207 (D. Colo. 1999) (*quoting St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) and *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). The first two factors will be discussed together.

> 1. *Whether the action would settle the controversy and clarify the legal relations*

As this Court found in its August 22, 2000 Memorandum Opinion and Order, adjudicating the declaratory judgment claim of the United States against EBID, EPCWID, El Paso, Hudspeth, NMSU, Stahmann, and the State Engineer would not fully adjudicate the wide-spread controversy over water rights in the Lower Rio Grande. It is still true that any declaration by this Court regarding the United States' right to divert, impound, and store Project water vis-a-vis the limited number of parties to this action would not be binding on the thousands of water rights claimants who are not parties to this action. Likewise, if the Court allowed Boyd and the Claimants to reopen and intervene, any decision with respect to Boyd's and the Claimants' water rights could be inconsistent with decisions of the state district court and the appellate courts of New Mexico. In sum, water rights in the Lower Rio Grande are much more effectively adjudicated in the state court proceeding. The claims of thousands of water rights claimants in the Lower Rio Grande will be fully considered in the state water adjudication. By continuing the stay in this case, the Court will avoid interfering with the state proceeding and will preclude a piecemeal and incomplete approach to adjudicating these water rights.

### 2. *Whether the remedy is an attempt at "procedural fencing"*

This Court sees the Motion as an attempt to procedurally undermine the state court water adjudication. It is obvious that Boyd and the Claimants are trying to obtain a different ruling in this Court after having suffered adverse decisions in state court. As with the Court's previous decision to abstain, the Court remains concerned that this proceeding is being used as "an arena for a race to *res judicata.*" *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (upholding district court's determination that a party was engaged in procedural fencing by initiating a declaratory judgment action in federal court on the eve of an insured's filing of a breach of contract suit in state court). Therefore, this factor weighs in favor of continuing the stay.

### 3. *Whether the action would increase friction between federal and state courts*

What the Court recognized in the Court's August 22, 2000 decision holds equally true now: the state court is uniquely positioned to comprehensively adjudicate Lower Rio Grande water rights. Memorandum Opinion and Order at 25. Congress recognized state courts' expertise when it enacted Section 8 of the Reclamation Act requiring the federal government to follow state law requirements when procuring water for reclamation projects.[13] Adjudication of water rights within a stream system is "peculiarly appropriate for comprehensive treatment" in state

---

[13] "Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof." 43 U.S.C. § 383. The Supreme Court has characterized 43 U.S.C. §383 as a statute exemplifying "cooperative federalism[.]" *California v. United States,* 438 U.S. 645, 650, 98 S.Ct. 2985, 2988, 57 L.Ed.2d 1018 (1978). The Supreme Court explained that in enacting Section 8, Congress was motivated not only by respect for state sovereignty, but also sought to protect water users from being subjected to different and possibly conflicting state and federal water use statutes. *Id.* at 668–69. The Court explained that a "primary motivating factor" for enacting Section 8 was Congress' intent to insure that state laws pertaining to the appropriation, distribution or use of water were preserved so as to avoid the confusion which would be occasioned by the same water rights being governed by both state and federal law. *Id.*

courts because state courts have "the greatest experience and expertise, assisted by state administrative officers. . . ." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983). Hence, reopening of this action to allow intervention would increase the friction between federal and state courts.

        4.    *Whether the state court adjudication provides a better or more effective remedy*

The state court water adjudication continues to provide a more effective remedy for all claims to Project water. The state court adjudication will eventually provide a complete determination of the rights of all Lower Rio Grande water users. Moreover, the claims of the thousands of water claimants and the parties in this action are necessarily intertwined, and thus, the claims are better addressed in a comprehensive proceeding. Consequently, "[the concern over inconsistent disposition of property] is heightened with respect to water rights, the relationships among which are highly interdependent. . . . [A]ctions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976) (commenting on the purposes of the Reclamation Act).

In sum, as in 2002, the five factors of the *Brillhart* abstention analysis still weigh in favor of maintaining the stay of this action and continuing the unified proceedings in state court.

    B.  *Renewed Motion to Intervene*

        1.    *Standing*

The United States and Las Cruces argue that neither Boyd nor the Claimants have standing to ask this Court to lift the stay and allow them to intervene because they are not parties to this action. Neither this Court's decision to abstain and deny Boyd's previous motion to intervene nor this Court's decision to stay these proceedings precludes Boyd and the Claimants

from moving to intervene in this action. Rule 24 allows intervention by "anyone" with a justiciable interest in the subject of the action. *See* Fed. R. Civ. P. 24(a) (requiring courts to permit intervention to anyone given that right under federal statute or by virtue of an interest related to property that is the subject of the action); Fed. R. Civ. P. 24(b) (allowing courts to permit intervention by anyone who is given the right under federal statute, or who has a claim that shares a common question of law or fact). Hence, Boyd and the Claimants do not lack standing to assert the Motion.

2. *Forum Shopping*

Las Cruces correctly points out that Boyd and the Claimants have actively asserted their rights in state court. However, Boyd and the Claimants, having been unsuccessful in state court, are asserting the same claims in an attempt to obtain a favorable, but inconsistent, decision in this Court. Boyd appealed the state district court's February 2012 Order dismissing his five claims, and the Court of Appeals just affirmed that decision. *See supra,* note 9. And although the state court denied the Claimants' motion requesting designation of a new stream system issue, the Claimants are able to assert their individual rights in the state court water adjudication. (*See* Mot. Ex. 11.) The Claimants appealed that ruling, but the New Mexico Court of Appeals summarily dismissed the appeal as interlocutory. Significantly, the New Mexico Court of Appeals commented that "[the Claimants] are still actively working within the water adjudication process to vindicate their claims." *Singh et al. v. United States, Elephant Butte Irrigation District*, No. 33,274, Memorandum Opinion (N.M. Ct. App., May 29, 2014). Boyd and the Claimants also moved to stay another Stream System Issue proceeding (No. SS-97-104) concerning the United States' rights in Project water. They argued that their rights preceded the United States' water rights in time and in priority. On June 18, 2014, the state court denied the stay motion. ORDER

DENYING PRE-1906 CLAIMANTS' MOTION TO STAY FURTHER PROCEEDINGS IN SS-97-104 (3d Jud. Dist. Ct., June 18, 2014).  (Mot. Ex. 9.) That decision is also on appeal.

### 3. *Boyd's and the Claimants' Arguments for Intervention*

Boyd and the Claimants maintain that from 1896 to the present, the procedural actions of the United States and New Mexico state officials, "have continually deprived [them] of their rights of due process to establish and defend the enjoyment and use of their Rights." Boyd complains that more than one hundred years ago the United States committed a "great historic fraud" and conspired to "forfeit" his predecessor's water rights through the use of Congressional enactments and through litigation activities in state territorial court and in the United States Supreme Court. Boyd laments the failure of any court to decide the actual basis on which Boyd and the Claimants assert priority water rights in the Lower Rio Grande. Boyd further complains about the February 17, 2014 decision by the state district court granting summary judgment and awarding the United States "all project, diversion and storage rights and control over all the water in the Rio Grande in New Mexico, without providing [Boyd and the Claimants] a full due process hearing to present all their evidence to establish their collective senior project rights, . . . [and] without considering the evidence that [Boyd and the Claimants] had produced of their senior project rights. . . ." (Mem. at 10-11.) The state district court has scheduled a trial to determine the priority date of the United States' water rights. However, Boyd complains that the state district court should have first addressed the priority date of the United States' claim. After a long recitation of the state court's errors, Boyd asks this Court to "review the real historic facts that underlie the state court's February 24, 2012 Order finding that Boyd's claims are barred from adjudication . . . and determine . . ., based upon all the facts, whether the state Court's February 24, 2012 decision was in error and a deprivation of Boyd's due process rights to

15

establish ownership of rights." (Mem. at 17.) This Court, however, stayed this proceeding under the *Brillhart* abstention doctrine precisely to avoid the inevitable outcome of Boyd's request: the danger of inconsistent decisions in this federal court proceeding and the state court water adjudication.

On a different note, Boyd argues that prior to the Stay Order, this Court essentially "granted Boyd the right as a defendant to intervene in this case, thereby taking jurisdiction over Boyd's claims . . . when the Court ordered a settlement conference between the United States and the Boyd Estate. . . ." (Mem. at 21.) Boyd reminds the Court that after he rejected a settlement offer from the United States, this Court "ordered an evidentiary hearing to determine if RGD&IC had completed works at Leasburg/Fort Seldon under the federal Act of March 3, 1891, thus showing this Court's intent to examine the facts preceding the 1903 territorial district court's default judgment of forfeiture under federal laws[.] . . ." (Mem. at 22.) Boyd then complains that this Court's settlement and pretrial proceedings were inappropriately interrupted by Las Cruces' appeal to the Tenth Circuit. However, Boyd fails to recognize that Las Cruces appealed *this Court's decision* to dismiss this action under the *Colorado River* and *Brillhart* abstention doctrines. And Boyd ignores the Tenth Circuit's affirmance of this Court's ruling that the claims asserted here would be better resolved in the comprehensive Lower Rio Grande Adjudication in state court. In sum, Boyd and the Claimants have failed to convince the Court to reconsider its decision to abstain, and thus, the Court will not reopen these proceedings and allow Boyd and the Claimants to intervene.

## C. *Conclusion*

The state district court has dismissed Boyd's claims and that decision has been affirmed by the New Mexico Court of Appeals. The state district court did not allow the Claimants to

adjudicate their claims collectively as a Stream System Issue, but the Claimants are still able to assert their individual claims in the water adjudication. Despite the Claimants' argument that in state court they must now "litigate their claims in a multitude of individual sub-file proceedings," the Claimants can still adjudicate their rights vis-a-vis other Project water users. Moreover, the state court is the best forum to determine Boyd's and the Claimants' rights under substantive state water law, the same law that this Court would apply. *See Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 569 (1983) (recognizing that state courts have valuable experience in adjudicating water rights under state law). Therefore, the Court sees no reason to set aside the stay, allow intervention, and thereby risk interference with the state court water adjudication.

IT IS ORDERED that

1. The MOTION TO EXCEED PAGE LIMITS (Doc. No. 286) is granted.

2. The MOTION TO EXCEED PAGE LIMITS (Doc. No. 287) is granted.

3. JAMES SCOTT BOYD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NATHAN BOYD, DECEASED'S, RENEWED MOTION TO INTERVENE and MOTION TO LIFT ITS AUGUST 15, 2002 STAY (Doc. No. 288) is denied.

4. THE PRE-1906 CLAIMANTS IN THE LOWER RIO GRANDE STATE WATER ADJUDICATION'S MOTION TO INTERVENE (Doc. No. 288-1) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE