UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

 Plaintiff,

vs.              No. 97 CV 0803 JAP/RPL

ELEPHANT BUTTE IRRIGATION DISTRICT,
EL PASO COUNTY WATER IMPROVEMENT
DISTRICT NO. 1,
HUDSPETH COUNTY CONSERATION and
RECLAMATION DISTRICT NO. 1,
CITY OF EL PASO,
CITY OF LAS CRUCES,
NEW MEXICO STATE UNIVERSITY,
STAHMANN FARMS, INC., and
STATE OF NEW MEXICO *ex rel.* STATE ENGINEER,

 Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING BOYD AND PRE-1906 CLAIMANTS' MOTION TO RECONSIDER

 On November 17, 2014, James Scott Boyd (Boyd) and the Pre-1906 Claimants Sammie Singh, Sr. Sammie Singh, Jr., Ed Provencio, Lupe Garcia, and Jonny Diaz (Claimants), through counsel Robert S. Simon, filed BOYD AND PRE-1906 CLAIMANTS' MOTION TO RECONSIDER THE COURT'S MEMORANDUM OPINION ISSUED ON OCTOBER 20, 2014 (Doc. No. 325) (the Motion). In the Motion, at pages 1 and 2, Boyd and the Claimants (together the Movants) ask the Court to reconsider "the facts, arguments and law presented by Boyd from its perspective of the *Brillhart* abstention elements with an emphasis on Section 8 of the Reclamation Act" and set aside the MEMORANDUM OPINION AND ORDER DENYING JAMES SCOTT BOYD'S RENEWED MOTION TO INTERVENE (Doc. No. 318) (the Order) entered on October 20, 2014.

1

I.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 59(e), a court can reconsider a decision if the movant shows: 1) the court made a manifest error of law or fact; 2) there is new evidence previously unavailable that justifies reconsideration; or 3) there has been an intervening change in controlling law. *Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1114, 1116 (D.N.M. 2006) (citing *Servants of the Paraclete, Inc. v. Great American Ins.*, 866 F. Supp. 1560, 1581 (D.N.M. 1994)). Stated another way, "[a] motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Id.* (citation omitted).

The Motion is presented under unusual procedural circumstances. In the October 20, 2014 Order that is the subject of the Motion, the Court essentially stood by its earlier decision to abstain from deciding the claims asserted in this action.[1] The Movants have been litigating their claims in a comprehensive stream adjudication in New Mexico's Thirteenth Judicial District Court, Dona Ana County, New Mexico. In one sense, the Movants ask the court to reconsider an Order that was itself a denial of the Movant's request to reconsider the Court's original abstention decision. Despite this unusual procedural posture, the Court has considered the Motion, but the Court finds no reason to amend or change the Order.

---

[1] On November 18, 1997, the Court granted the City of Las Cruces' uncontested motion to intervene. There were additional contested motions to intervene, one of which was filed by Boyd. *See* MOTION TO INTERVENE AND TO FILE COUNTER-CLAIM FOR DECLARATORY JUDGMENT AND EJECTMENT OF JAMES SCOTT BOYD, ADMINISTRATOR OF THE ESTATE OF NATHAN BOYD AND MEMORANDUM IN SUPPORT (Doc. No. 137). On August 22, 2000, the Court dismissed the United States' complaint and denied as moot Boyd's motion to intervene. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 245) at 3 n. 4. The United States, El Paso, and EPCWID appealed the dismissal. On July 25, 2002, the Tenth Circuit Court of Appeals upheld the Court's decision to abstain under *Brillhart. United States v. City of Las Cruces et al.*, 289 F.3d 1170, 1175 (10th Cir. 2002).  However, the Tenth Circuit noted that the Court failed to articulate why it decided to dismiss rather than stay this case. *Id.* Consequently, the Tenth Circuit vacated the Court's dismissal and remanded the case with instructions to "consider the propriety of a stay." *Id.* On remand, the Court held a hearing and stayed this proceeding. The Court also closed this case for administrative purposes but provided, "should further proceedings become necessary or desirable during the pendency of the water adjudications . . ., any party may initiate proceedings as though the case had not been closed for administrative purposes." *See* ORDER (Doc. No. 281) (the Stay Order).

## II. DISCUSSION

A.  *Abstention is still appropriate*.

In the Order, the Court determined that abstention was appropriate in this case under the *Brillhart* abstention doctrine.[2] *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). The elements for abstention under *Brillhart* guide federal courts in determining whether to abstain from a declaratory judgment action brought in federal court when there is a parallel state court proceeding involving the same parties and similar issues. *Brillhart*, 316 U.S. at 495. To determine whether to abstain and stay a federal declaratory judgment action, courts consider whether the federal action: (1) would settle the controversy; (2) would serve a useful purpose in clarifying the legal relations at issue; (3) would provide a means of "procedural fencing" or "an arena for a race to *res judicata*"; (4) would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) would provide a better or more effective remedy. *Qwest Communications Int'l, Inc. v. Thomas*, 52 F. Supp. 2d 1200, 1207 (D. Colo. 1999) (*quoting St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) and *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)). In its Order, the Court determined that these factors weighed in favor of abstention. The Movants have not persuaded the Court to alter that conclusion.

The Movants urge the Court to consider the *Brillhart* factors in light of Section 8 of the Reclamation Act, which provides:

---

[2] In *Brillhart*, the United States Supreme Court held that declaratory relief should not be granted by a federal court "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942).

> Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 U.S.C. § 383.

Movants argue that this Court should exercise its jurisdiction to decide whether the United States violated this statute by affecting "any right of . . . any landowner, appropriator, or user of water in, to, or from" the Lower Rio Grande. However, the United States has not violated this statute by urging its rights to water in the state court water adjudication, and the state court can rightly determine the priority date of the United States' water rights vis a vis other claimants to water in the Lower Rio Grande. This determination is primarily a function of state law of prior appropriation. The United States Supreme Court noted that in Section 8 of the Reclamation Act, Congress recognized the special expertise of **state courts** in water adjudications and the preeminence of state law by requiring the federal government to procure water for reclamation projects in accordance with state law. *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 569 (1983) (citing 43 U.S.C. § 383). The Supreme Court cited the following discussion of Section 8 in the 1951 Senate Judiciary Committee:

> Down through the years the courts of the respective States marked out the pathway whereby order was instituted in lieu of chaos. [Water] [r]ights were established, and all of this at the expense, trial, and labor of the pioneers of the West, without material aid from our United States Government until a much later time when irrigation projects were initiated by Congress through the Department of Interior and later the Bureau of Reclamation. Even then Congress was most careful not to upset, in any way, the irrigation and water laws of the Western States.

*Id.* (quoting S. Rep. No. 82-755, at 3 (1951)). As the Court recognized in its October 20, 2014 Order, the state courts are better equipped to adjudicate water rights under state law and the pending state court water adjudication is a more comprehensive adjudication of water rights

related to the Lower Rio Grande and the Rio Grande Project. In substance and effect, Section 8 of the Reclamation Act supports this Court's decision to abstain and to defer to the state court water adjudication.

                1.   *The Brillhart factors support abstention and the stay.*

The Movants contend that the Court was misled by the State of New Mexico's argument that the state court water adjudication involved thousands of claimants whose water rights could be affected by a decision in this Court. The Movants question the Court's conclusion that this action would upset the ongoing state court adjudication. However, in their next statement, the Movants declare that in this action, if the Movants prevail on their claims, thousands of water claimants will be positively affected because they would receive an earlier priority date. The Movants then assert "the issue of ownership of the project, storage and diversion rights only directly involves two parties, the Boyd interests and the U.S. and both of them are before this Court[.] The determination of competing project claims between Boyd and the US could substantially benefit every water user who is a claimant in this adjudications [sic] and diminish the damages they are suffering, . . ." (Mot. at 2.) The Movants misunderstand the Court's analysis. In deciding whether to abstain, the Court looks at the potential effect, either positive or negative, that this declaratory judgment action will have on the parties to the state proceeding.

The Movants further assert that the state court has failed to examine the facts supporting their claims. However, that statement is misleading. The state district court and the New Mexico Court of Appeals have carefully examined the legal and evidentiary basis of Boyd's claims to Rio Grande Project water rights and have dismissed those claims. Contrary to the Claimants' assertions, their claims are being separately adjudicated in the state court proceeding. In sum, the state courts are expertly adjudicating all of these water rights.

2. *This proceeding would not clarify the legal relations at issue.*

A declaratory judgment by this Court regarding the United States' right to divert, impound, and store Project water vis-a-vis the parties to this action could yield a decision that is at odds with the state court's adjudication of all of the claims to Rio Grande Project water. The Movants fail to recognize that "the inquiry into whether the declaratory judgment . . . clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court." *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (citation omitted). Water rights in the Lower Rio Grande are much more effectively adjudicated in the state court water adjudication because all claims to water rights are being considered. By abstaining and continuing the stay of this action, this Court will avoid interfering with the state proceeding. Moreover, this Court's abstention avoids a piecemeal approach to adjudicating water rights related to the Lower Rio Grande. The Movants contend that the state district court and the New Mexico Court of Appeals have "chosen to not examine the facts underlying Boyd's claims when one examines their decisions. . ." (Mot. at 3.) The Movants then detail issues that they think are questions of federal law and assert these are questions that the state courts are apparently not equipped to analyze. However, most of the issues presented are in fact state law issues related to priority of rights to Rio Grande Project water, and the state court is more than able to determine both state law and federal law issues.

The Movants are really asking this Court to overrule adverse state court decisions. The state district court dismissed Boyd's claims for failure to assert a cognizable claim to water rights and because Boyd's claims were barred by *res judicata*. The New Mexico Court of Appeals upheld the district court's decision in a well-reasoned opinion. *Boyd Estate v. United States*, No. 32,119, --- P.3d ---, 2014 WL 5285755 (N.M. Ct. App. Oct. 15, 2014). Boyd argues he

"presented sufficient evidence to demonstrate that the 1903 forfeiture decision did not include the four elements necessary for a preclusive res judicata decision, but the state courts, at the prompting of the U.S. and its surrogates, have refused to examine that evidence." (Mot. at 4.) Boyd points to the 1903 ruling in which the United States Supreme Court declared that the water rights claimed by Boyd's predecessor, Dr. Nathan Boyd, were forfeited under the Reclamation Act. *See United States v. Rio Grande Dam & Irrigation Co.*, 13 N.M. 386, 85 P. 393 (1906); and *Rio Grande Dam & Irrigation Co. v. United States*, 215 U.S. 266, 275–78 (1909) (upholding default judgment of forfeiture under Reclamation Act). Dr. Boyd's company, the Rio Grande Dam & Irrigation Company (RDG&IC), began construction activities related to the Rio Grande Project, part of which was a planned construction of the Elephant Butte Dam. Boyd argues that these rulings should not have been given *res judicata* effect because they were procured by fraud and because Dr. Boyd was not a party to the litigation. Boyd maintains that the "forfeiture court only had in personam [sic] jurisdiction of Rio Grande Irrigation and Land Co. ("the English Company") and RGD&IC and did not have in personam [sic] jurisdiction of either Boyd or any of the other Pre-1906 Claimants[.]" (Mot. at 5.) However, the New Mexico Court of Appeals carefully considered this argument and stated, "[t]he critical issue before this court is the first *res judicata* element. . . . According to Boyd, he has continually alleged that because Dr. Boyd himself was not a party to the forfeiture proceedings, the first element of res judicata is *not* satisfied. He reiterates that argument on appeal." *Boyd Estate* ¶ 24 (emphasis in original). Although Dr. Boyd, Boyd's predecessor, was not a named party in the 1903 forfeiture litigation, the New Mexico Court of Appeals recognized that it "must determine whether [Dr. Boyd] was in privity with the Company [RGI&DC], which *was* a named party to the litigation." *Id.* ¶ 25 (emphasis in original). The Court of Appeals concluded that Dr. Boyd's claims "depend on his

7

assertion that he is successor in interest to the water rights of the Company. This puts him in privity with the Company and accordingly, for the purposes of res judicata, he is considered the same party." *Id.* ¶ 26. Hence, the Court of Appeals concluded "all four elements of res judicata are met and that Boyd's claims are precluded as a result." *Id.*

Contrary to the Movants' assertions, the state courts carefully examined the effect of the 1903 decision that resulted in the forfeiture of Dr. Boyd's water rights. And by extension, Boyd's water rights fail because he is Dr. Boyd's successor. Disagreement with the state court decision is a wholly improper basis on which to argue that this Court should lift the stay and assert jurisdiction over Boyd's claims.[3]

        3. *The remaining Brillhart factors support abstention.*

As the Court concluded in its Order, the Movants seem to be attempting to reopen this proceeding as a means of "procedural fencing" or "to provide an arena for a race to *res judicata*." It concerns the Court that the Movants are seeking a decision from this Court to restart this proceeding after negative decisions in the state courts. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir.1995) (upholding district court's determination that insurer's federal declaratory action, filed on eve of insured's state contract suit, constituted procedural fencing). The state court water adjudication is progressing, and a declaratory judgment action in this Court would improperly interfere with those proceedings.

---

[3] The Motion at page 6 contains the following discussion:

> The farmers had a share in the same project property rights as tenants in common with Boyd due to their earlier appropriation of diversion rights for their community ditches. The farmers attempted to intervene but were denied the right to intervene to protect their rights, even though the farmers built the community ditches and farms and were the ultimate water right holders of all the irrigation waters. . . . Both the territorial and state and federal Court of U.S. Claims have used the forfeiture as a means to prevent the Claimants from claiming their project and historic water rights[.]

The Court assumes that the reference to "farmers" is a reference to the Pre-1906 Claimants. The state court will ably determine the Claimants' rights in their individual water rights proceedings. *See* Order at p. 10 and n. 12 (describing state court proceedings related to the Claimants).

Additionally, lifting the stay and deciding these claims in this Court would increase friction between our federal and state courts and improperly encroach upon state jurisdiction. State courts have a unique role and expertise in adjudicating water rights, and this Court's declaration of rights would encroach on that important role. Finally, going forward with this proceeding would not provide a better or more effective remedy for Boyd, the Claimants, and the other parties in this action. The Court abstained and stayed this proceeding by recognizing "the reality of water rights disputes in the West. Thousands of individuals claim water rights that depend on the resolution of the claims of others. The situation has long been recognized as demanding a comprehensive adjudication of all users' claims." *Las Cruces*, 289 F.3d at 1191. That reality has not changed, and the state court water adjudication is better "designed to provide a comprehensive solution to a complex problem." *Id.*

### III. CONCLUSION

The Movants have failed to convince the court that it made a manifest error of law or fact in its abstention decision. Nor have Movants presented new evidence previously unavailable that justifies reconsideration of the Order.

IT IS ORDERED that BOYD AND PRE-1906 CLAIMANTS' MOTION TO RECONSIDER THE COURT'S MEMORANDUM OPINION ISSUED ON OCTOBER 20, 2014 (Doc. No. 325) is denied.

                                               *[signature: James A. Parker]*
                                               SENIOR UNITED STATES DISTRICT JUDGE